Nichols, C. J.
In June, 1914, Joseph Thompson, a stockholder of The George W. McAlpin Co., of Cincinnati, filed his petition in the Hamilton county court of common pleas, seeking equitable relief, asking, first, that a receiver be appointed to take charge of and manage the property and assets of the corporation, and, second, that the court administer as a trust fund the property and assets of the corporation.
Thereafter the court to which application was thus made appointed Elroy C. Denton as such receiver, who proceeded to administer, the trust, and, after conducting the business as a going concern for nearly a year, sold the assets then remaining, consisting largely of merchandise, to B. W. Jones, which sale was confirmed by the court on May 10, 1915.
On May 7, 1915, three days prior to such confirmation, B. W. Jones, the prospective purchaser, who was also a large creditor of the corporation, was granted leave by the court to file an intervening petition in the original case, and thereby became a party thereto.
On the same day, Jones, as such intervenor, filed his petition, concluding the same with the following prayer: “This intervenor prays that in making any orders herein the court will protect his and the rights of creditors.”,
In the bid submitted by Jones and accepted by order of court it was stipulated that if his bid be accepted he would “pay the costs and expenses of administration, as may be finally allowed and adjudicated in this cause, in this court or on error, or *335 appeal, including the fees of the receiver and the attorney for the receiver.”
In the entry confirming the sale it was ordered by the court that the receiver “retain out of the cash in his hands the sum of $21,250.00 to abide the final allowance and adjudication of fees and allowances to the receiver, attorneys and costs.”
On May 22, 1915, the following order was entered: “Upon the evidence adduced, the court, being fully advised in the premises, upon due consideration, finds that the fair and. reasonable value of all services by said Elroy. C. Denton as receiver herein is $15,000.00. It is accordingly ordered and adjudged by the court that the receiver herein pay to Elroy C. Denton the sum of $15,000.00 in full payment of all services as receiver of this estate.”
From this order Jones, together with certain other parties, appealed to the court of appeals. Motion was made by appellee Denton to dismiss the appeal on the ground that the court of appeals was without jurisdiction to entertain an appeal from such an order in such a case. The court of appeals sustained the motion and dismissed the appeal. From this judgment error is prosecuted to the supreme court of Ohio, appellants coming as a matter of right, since the case involves a question arising under the constitution of the state of Ohio.
There is but a single question in this case, important as it is: Under favor of that part of Section 6, Article IV, of our Constitution, which provides that courts of appeals shall have “appellate jurisdiction in the trial of chancery cases,” does an appeal lie from an order of the kind entered *336 May 22, 1915, fixing the compensation of the receiver ?
This court has already held that all jurisdiction in appeal attached to the court of appeals is constitutionally conferred. The Cincinnati Polyclinic v. Balch, 92 Ohio St., 415.
In the same case it was held that the general assembly is wholly without power to either enlarge or diminish such jurisdiction.
In the case of Wagner v. Armstrong et al., 93 Ohio St., 443, this court declared to be unconstitutional Section 12224, General Code, which purported to confer such jurisdiction on the court of appeals.
The case in hand is not fraught with the difficulty encountered in Wagner v. Armstrong et al., supra, for here the case is undoubtedly one of chancery origin. The relief sought, the manner of the administration of the trust, the entire proceedings had in the court of common pleas, were all of an equitable nature.
Counsel for appellee have submitted for the consideration of the court five propositions of law in support of their contention that an appeal does not lie from an order of this character, all of which are worthy of the attention of the court.
First: That the Ohio law as to appeals is different from all others, and in this state the entire action is carried up for a trial de novo upon the facts and law.
This contention may in the main be granted, without being in any sense determinative of the specific point now under consideration.
*337 Second: That the order complained of does not involve the main controversy in the case or relate to any iss.ue between the parties, but is only incidental or ancillary thereto, and is therefore not .appealable.
Third: That under Section 6, Article IV, of the State Constitution, as amended September 3, 1912, jurisdiction of the court of appeals is limited to the trial of chancery cases, and an order on a motion fixing the compensation of a receiver, after judgment rendered between the parties on the merits, is not a trial in any sense.
The second and third points thus advanced will be treated as one.
Were these proceedings had under favor of old Section 12224, General Code, which fixed the jurisdiction of the circuit court on appeal, there might be some doubt as to the right of an aggrieved party to appeal from the order under consideration, although, for all of that, authority is not wanting under the old order of things for an appeal from just such an order.
In the case of Gardiner et al. v. Railroad Co. et al., 65 Ohio St., 608, decided by this court without opinion, an examination of the record discloses the fact that the court of common pleas of Huron county made allowance to certain receivers, as compensation for their services, the sum of $115,000, throwing in for good measure a private car.
Appeal was made to the circuit court where appellants were met with a motion to dismiss. The circuit court overruled this motion, heard the case *338 and reduced the compensation allowed by the common pleas court from $115,000 to $15,000. The private car so generously awarded was also withdrawn from the receiver.
The usual and most forceful reason advanced against regarding unreported cases as judicial authority is that it is not possible always to ascertain the exact legal proposition involved and decided. It is urged, and with good reason, in such cases, that where several errors have been assigned, and the court does not state the point on which the decision rests, the uncertainty is such as to destroy the case as commanding authority.
However, in the Gardiner case, supra, it is wholly beyond dispute that the question involved in the instant case was there decided by the court. The point made by the receivers in that case, and on which they predicated their motion to dismiss, was that under the statute then regulating the jurisdiction of the circuit court that body was wholly without jurisdiction, since the order from which appeal was had was not a final order. The action of that court in overruling the motion to dismiss and in proceeding to hear the case on its merits necessarily sanctioned the practice there invoked, and the supreme court in afterwards affirming the judgment of that court necessarily gave to that decision its full commendation. Under such circumstances, the decision of the supreme court cannot be brushed aside as being wholly without influence.
We are now, however, dealing with the subject of appeals from an entirely new and an essentially different angle, and, since the constitution itself and *339 not the general assembly now deals with the subject, we feel free to approach a consideration of the matter as if it were an original question.
We recognize that there may be many occasions where an appeal from an order of this character will be invoked, and it is felt to be the duty of the court in the interpretation of the constitution to establish in the interest of justice a rule which will facilitate proceedings by way of appeal.
It would certainly require no argument to support the position of plaintiffs in error that some right of review should be vouchsafed them in a matter of this importance. If it were to be held that the order in question is not a final order from which appeal will lie — and if it be hereafter held that error could not be prosecuted from the same order for the same reason — then we are making this very order final, conclusive and forever binding by the very act of holding that it is not final.
In this connection attention should be directed to the fact that counsel for defendant in error in their brief inferentially contend just as earnestly that error does not lie from the allowance of compensation to a receiver, as they do that there can be no appeal. It is their contention that the order in question is neither a judgment nor a final order.
The position as to the want of power to prosecute error is supported by calling attention to the fact that Section 12247, General Code, which conferred jurisdiction on the circuit court in error proceedings, employed the terms “judgment or final order,” while the new constitution, in providing like jurist-diction to the court of appeals, omits “final order” *340 and employs “judgments” only. What effect, if any, this change will work on established practice in error proceedings, we will not now undertake to say, as that phase of the controversy is not now before the. court, but it is pertinent to observe that if neither error nor appeal does lie then the court that selects the receiver may finally fix the compensation of an officer of its own selection, and, no matter how grievous a wrong be done to creditors, they are without remedy.
We are confronted with the further fact that if by judicial construction of the terms here employed neither error nor appeal may be available to an aggrieved party, then there is no forum where the wrong may be remedied, for it is certain by reason of recent adjudications of this court that the legislature is powerless to act.
It is difficult enough to determine in the first place just what was intended by the constitution framers in the use of the term “chancery cases.” We have already had our attention called to the fact that in the court of appeals many diverse views are entertained on this subject, and it is learned that whenever a case of any kind or character is attempted to be appealed to the court of appeals the first step invariably taken by appellees is to file a motion to dismiss for want of jurisdiction.
We do not want to add to the present difficulty or enlarge the restrictions on appeals by adopting a narrow and stringent rule as to just what orders made in a concededly chancery case may be the subject of appeal. We think best to wipe off the slate and start anew.
*341 We hold that the term “trial” as used in the constitution is broad enough to include any judgment, final order or decree, not interlocutory in its nature, affecting the substantial rights of a party to a chancery suit.
In the instant case the order was made, it is true, after judgment had been rendered on the issues defined by the original pleadings in the case, but it was of such character as to substantially affect the interests of all parties to the record, and especially those creditors, large in number, with claims totaling over a million dollars, who, while nofi formal parties, were in fact the real parties in interest.
We ascertain that in the matter of making the order fixing the receiver’s compensation, a regular hearing was had, testimony pro and con was offered, arguments of counsel were heard, and the entry of allowance states as a fact that the court “after due consideration” made the order in question. This order certainly had all the elements of a judgment.
We feel that we are not doing violence to the root-meaning of the term “trial” by holding that the proceedings so had would constitute a judicial investigation and determination of an issue that arose during the progress of the administration of the trust, ancillary, it is'true, to the main issues, but important and indeed necessary to finally determine the rights of the interested parties. It must be conceded that the order of the court ’finally disposed of a particular independent issue that arose in the case.
*342 It is the peculiar function and attribute of an equitable proceeding that by it the chancellor is enabled to deal with the entire subject-matter and to ascertain and determine the rights of parties which relate to and concern it, but which are wholly independent of other matters and issues involved in the proceeding.
The order so made was in no sense interlocutory in its nature, and consequently the judgment that is to be entered in this case will in no wise sanction interminable appeals of questions arising in the course of the hearing of a chancery case of this or any other character.
Fourth: It is claimed that “proceedings in relation to the appointment and removal of receivers are special proceedings under the code, froth which no appeal lies.”
This contention cannot be held to be sound in view of thq holding of this court in the case of Wagner v. Armstrong et al., supra. This court denied the contention made in that case that since partition was a special statutory proceeding it no longer retained its chancery nature and was therefore not appealable under the new constitution.
Fifth: . It is claimed that there were no proper parties before the court of appeals, the particular point raised being that the appellee, Elroy C. Den-ton, was not a party to the action in the common pleas court, and is not a party to the proceedings on appeal.
In support of this contention citation is made of the case of Fiedeldey v. Diserens, 26 Ohio St., 312, where it is held: “A master commissioner, or other *343 party entitled to have fees taxed as costs in an action, can not in his own name prosecute a proceeding in error to reverse an order of the court for re-taxing the costs, or disallowing his claim for fees in the case.”
We do not think the rule established in that case has application here. The appeal here was prosecuted by parties to the action, that is, parties originally, or made so on application to the court before the order complained of was entered.
While it is true that the appellee was never formally made a party to the suit, we hold, however, that for the purposes of this proceeding, the entry of June 26, 1914, appointing appellee receiver of the assets of the corporation, made him a party to the action. The distinction between such an officer of the court, on the one hand, and an attorney, witness, or a master commissioner, on the other, is too marked to call for elaboration.
If the receiver was not, in the larger sense, a party to the action, then the creditors had no representative in court. It is the more rational view, we ‘think, that he was very much in court, the very arm of the court, and the representative of creditors, the alter ego of the company itself.
The judgment of the court of appeals is reversed and the cause is remanded to that court with instruction to overrule the motion to dismiss the appeal.

Judgment reversed.

Wanamaker, Newman, Jones, Matthias, Johnson and Donahue, JJ., concur.